UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GABRIEL ECKARD,<br><br>                Plaintiff,<br><br>  v.<br><br>JEFF STRINGHAM, et al.,<br><br>                Defendants. | CASE NO. 2:18-cv-00898-RAJ-BAT<br><br>**REPORT AND RECOMMENDATION** |

       Defendants Lisa Anderson, Sarah Blackburn, Breeann Caroway, Kathy Grey, Joan Jaeger, Mark Jones, Sandra Stice, Jeff Stringham, John Vandenberg, and Jack Warner move for summary judgment dismissal of Plaintiff Gabriel Eckard's 42 U.S.C. Section 1983 allegations. Dkt. 27. Plaintiff alleges that Defendants, all of whom work at the Department of Correction (DOC) Monroe Correctional Complex (MCC) in Monroe, Washington, violated his Eighth Amendment right to be free from cruel and unusual punishment when they failed to respond to his emergency calls from his cell on several occasions, deprived him of a pen for several days, and denied him exchanges of clothing and bedding as frequently as required by DOC policy. Plaintiff seeks damages and declaratory and injunctive relief. Dkt. 8.

       Defendants contend they are entitled to summary judgment dismissal of Plaintiff's claims because there are no genuine issues of material fact, they did not violate Plaintiff's constitutional rights, they are entitled to qualified immunity from Plaintiff's damage claims, and any claims for injunctive relief are moot because Plaintiff is no longer in DOC custody. Dkt. 27.

REPORT AND RECOMMENDATION - 1

The Court granted Plaintiff's request for an additional thirty days to respond to Defendants' motion for summary judgment and re-noted the Defendants' motion for summary judgment for March 22, 2019. Dkt. 33. Plaintiff did not file a response. Pursuant to Fed. R. Civ. P. 56(e), the Court may grant summary judgment in Defendants' favor if the motion and supporting materials, including the facts considered undisputed, show Defendants are entitled to it.

The undersigned recommends the Court grant Defendants' motion for summary judgment and dismiss Plaintiff's claims with prejudice.

**STATEMENT OF FACTS**

**A.    Declaring Emergencies**

Plaintiff alleges that at the time in question, he was housed in Unit A, Cell 209 of MCC's Special Offenders Unit (SOU). In March and April of 2018, Plaintiff attempted to declare mental health emergencies via emergency complaint forms, his emergency call button, or in person on five separate occasions. He alleges that on each of these occasions his requests were refused or ignored and when he later followed up with Defendants Caraway, Grey, Anderson and Warner, no action was taken to ensure his access to emergency services. Dkt. 9 at 3-4. Specifically, Plaintiff alleges that Defendant Jeff Stringham ignored his mental health emergencies on March 3, 2018; March 9, 2018; March 27, 2018; and April 2, 2018 (for low blood sugar). Plaintiff alleges that on March 9, 2018, Defendant Sandra Stice was in the control booth with Defendant Stringham and she also ignored his emergency call. *Id.*, ¶ 10. Plaintiff alleges that Defendant John Vandenberg, who was the shift control booth officer on March 27, 2018, pretended not to hear his emergency call button or hear Plaintiff saying three times that he was going to kill himself. *Id.*, ¶ 5. Plaintiff alleges that on April 3, 2018, Defendants Mark Jones and Joan Jaeger

REPORT AND RECOMMENDATION - 2

failed to alert mental health staff after Plaintiff informed them that he was having suicidal ideation. *Id.*, ¶ 7.

Jeffrey Stringham is an MCC correctional officer, who worked at the MCC Intensive Management Unit (IMU) for eight years, and spent the last two years working in A–Unit of the Special Offenders Unit (SOU) which houses primarily severely mentally ill inmates. Dkt. 28, Declaration of Jeffrey Stringham. Mr. Stringham is familiar with Plaintiff, both from his time in the MCC IMU and his time in A–Unit of SOU. Plaintiff was sent to A–Unit of SOU because DOC had placed a "separatee" between him and an IMU nurse whom Plaintiff had harassed excessively. Plaintiff did not, to Mr. Stringham's knowledge, have serious mental health issues and was in A–Unit of SOU only because of his misconduct towards the IMU nurse. *Id*.

Mr. Stringham could not have failed to respond to an emergency call or a written emergency complaint on March 3, 2018, as this was a Saturday and Mr. Stringham does not work on Saturdays. Dkt. 28, Stringham Dec., ¶ 5. According to Mr. Stringham, if Plaintiff made an emergency call on March 9, 2018, Mr. Stringham would have contacted the appropriate staff to check on Plaintiff, including mental health staff or medical staff. *Id*., ¶ 4.

After Plaintiff submitted two written emergency grievances on March 27, 2018, Mr. Stringham notified the mental health counselor from F–Unit, Mr. Keith Toyoda. Mr. Toyoda went to A–Unit and talked with Plaintiff and then informed Mr. Stringham that Plaintiff was fine. *Id.*, ¶ 6.

Mr. Stringham states that on April 2, 2018, Plaintiff was demonstrating extremely inappropriate behavior and he was advised that DOC staff would work with him if he demonstrated appropriate behavior. Instead, Plaintiff stated to Mr. Stringham, "When I get out of here I'm going to put it in your wife's ass. Does she have an asshole? I'm going to fuck the bitch.

REPORT AND RECOMMENDATION - 3

Just wait till I get out of here. I'm going to fuck her in the ass." *Id.*, ¶ 7. Plaintiff has a long history of making inappropriate statements to Mr. Stringham and other MCC staff, including threatening to shoot Mr. Stringham in his face and kill him, and threatening to kill other staff members. Mr. Stringham does not recall Plaintiff advising that he had a medical emergency related to low blood sugar on April 2, 2018, and there was nothing about his interaction with Plaintiff on this date that remotely indicated that he was having a medical emergency. Mr. Stringham states that in spite of Plaintiff's inappropriate and offensive behavior, he did not ignore Plaintiff's emergency complaints and would have notified appropriate medical and mental health staff. *Id.*; *see also*, Ex. 1 attached to Stringham Dec. (April 2, 2018 Infraction Report).

Mr. Stringham is not aware that Plaintiff ever committed self-harm or attempted to commit suicide while he was housed in A-Unit in 2018. DOC records to not show that Plaintiff ever committed or claimed to have committed, any self-harm on March 3, 2018, March 9, 2018, March 27, 2018, April 2, 2018, or on any other date in 2018. DOC records also do not indicate that he had a medical emergency on April 2, 2018. MCC staff have responded to many emergencies declared by Eckard and most of them, if not all of them, were false emergencies. *Id.*, Ex. 2.

John Vandenberg is currently employed by the Washington DOC as a Correctional Officer at the MCC and has worked for DOC for four years. Dkt. 49, Declaration of John Vandenberg, ¶ 2. Mr. Vandenberg has never ignored inmates' emergency calls from their cells and would not have ignored Plaintiff's emergency calls. *Id.*, ¶ 3. It is possible that Plaintiff made an emergency call (on March 27, 2018) and that Mr. Vandenberg did not hear them clearly enough to understand that they were emergency calls as the intercom system in A–Unit is not very clear and has a lot of static. *Id.*

REPORT AND RECOMMENDATION - 4

1   Mr. Vandenberg was and is not aware that Plaintiff has any serious mental illness or that
2   he was a threat to commit self-harm or suicide. *Id.*, ¶ 4. Plaintiff was an extremely abusive
3   inmate towards staff and his abusiveness included declaring numerous emergencies that were
4   false. *Id*. Plaintiff's Offender Management Network Information (OMNI) system Chronos reflect
5   that Plaintiff repeatedly made false claims of emergencies and that staff continued to respond to
6   his claims of emergencies in spite of his history. Plaintiff's DOC records also show that he did
7   not self-harm on March 27, 2018, or at any other time in 2018. *Id*.

8   Kathryn Grey is currently employed by the Washington DOC as a Correctional
9   Mental Health Unit Supervisor at the Monroe Correctional Complex and has worked for DOC
10  for twenty years. Dkt. 30, Declaration of Kathryn Grey, ¶ 2. Plaintiff consistently made
11  emergency calls from his cell in A–Unit and submitted emergency grievances and kites when no
12  emergency existed. In spite of Plaintiff's constant abuse of the emergency call button in his cell
13  and the grievance system, Ms. Grey consistently advised staff in the unit that they should
14  respond immediately to all emergency calls and grievances and to her knowledge, they did. Ms.
15  Grey was never able to confirm that staff failed to properly respond to any of Plaintiff's
16  emergency calls because such calls are not recorded. DOC records do not indicate that Plaintiff
17  ever harmed himself while in A–Unit in 2018 and he never advised Ms. Grey that he had harmed
18  himself or had tried to do so. *Id*.

**B.   Clothing and Linen**

20  Plaintiff alleges that from January 1, 2018 through April 1, 2018, he was seldom
21  provided a change of clothing more than twice a week and a change of linens was rarely
22  provided and when he addressed the issue with Caraway and Grey, no corrective action was
23  taken. Dkt. 8, ¶ 9.

REPORT AND RECOMMENDATION - 5

According to Ms. Grey, Plaintiff's allegation that there were problems in A–Unit with clothing and linen exchanges in the first few months of 2018 is accurate. Dkt. 30, Grey Decl., ¶ 5. For reasons beyond their control, staff in A–Unit were unable to provide inmates clothing and linen exchanges as often as was normally provided. The main problem with getting sufficient clothing and bedding for the inmates in A–Unit stemmed from the institution laundry not returning all the clothing and bedding sent to the laundry from A–Unit. Correctional Sergeant Caraway and Ms. Grey worked diligently to resolve this problem and were mostly able to resolve it after a couple of months. In spite of inmates in A–Unit not getting the number of clothing and linen exchanges that staff wanted to give them, no inmate in A–Unit, including Plaintiff was ever denied a clothing or linen exchange that was needed to resolve a situation that presented a risk to the health or comfort of the inmate. *Id.* Plaintiff never advised Ms. Grey that his clothing or bedding was soiled or unsanitary, or that his clothing or bedding situation was any sort of risk to his health or his comfort, and she is not aware that Plaintiff ever made such a claim to any of the staff in A–Unit. *Id.*

**C.    Replacement Pen**

Plaintiff alleges that on April 1, 2018, a pen was taken from his cell during a cell search. When he spoke to Defendant Caraway about getting a replacement pen, she became agitated and told Plaintiff he was arguing with her and said "good luck getting a pen from these guys" and she then instructed staff to not give Plaintiff a pen until his behavior was "appropriate." Dkt. 8, ¶ 8. Plaintiff claims that Defendants Caraway and Vandenberg took his pen away to harass him and when Plaintiff attempted to address the issue with Defendant Anderson, she took no corrective action. *Id.* Plaintiff's prison grievance relating to this issue reflects that while a pen was taken from him on April 1, 2018, he was given another pen on April 3, 2018:

REPORT AND RECOMMENDATION - 6

> On April 2, 2018 Breeann Caraway spoke to me at my cell front in the morning before lunch. She told me that I would not be given a pen and then instructed unit staff not to give me a pen until my behavior was "appropriate." This directive was entered into an electronic log. My pen was removed the previous day to harass me and a new one was not provided. I was not on restrictions or conditions of confinement modifications at the time. **I did not receive a pen until the next day on April 3.**

Dkt. 8-2 at 17 (emphasis added).

## SUMMARY JUDGMENT STANDARD

The Court shall grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (2010). In support of a motion for summary judgment, the moving party need not negate the opponent's claim, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); rather, the moving party will be entitled to judgment if the evidence is not sufficient for a jury to return a verdict in favor of the opponent, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). When the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, summary judgment is warranted. *See Beard v. Banks*, 548 U.S. 521, 529 (2006).

The moving party bears the burden of showing that there is no evidence which supports an element essential to the non-movant's claim. *Celotex*, 477 U.S. 322. In order to defeat a motion for summary judgment, the non-moving party must make more than conclusory allegations, speculations or argumentative assertions that material facts are in dispute. *Wallis v. JR Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994).

## DISCUSSION

Plaintiff's claims relating to his treatment during his confinement are subject to scrutiny under the Eighth Amendment. A prison official violates the Eighth Amendment only when two requirements are met: (1) the inmate must show that he is incarcerated under conditions posing a

REPORT AND RECOMMENDATION - 7

substantial risk of serious harm; and (2) the prison official must have a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825 (1994). Thus, the deprivation alleged by the inmate must be, objectively, "sufficiently serious", and subjectively, the prison officials must know of and must deliberately disregard the risk of harm to the inmate. *Farmer*, 511 U.S. at 834, 842. If one of the components is not established, the court need not inquire as to the existence of the other. *Helling v. McKinney*, 509 U.S. 25, 35 (2018).

Only those conditions of confinement that deny a prisoner "the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir.1993). An inmate's suicide or significant self-harm is sufficiently serious to satisfy the objective element of an Eighth Amendment claim. *Lemire v. CA. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013); and *see Simmons v. Navajo County, Ariz.*, 609 F.3d 1011 (9th Cir. 2010).

**A.    Emergency Calls and Grievances**

Plaintiff does not allege, in his complaint or in the grievances attached to his complaint, that he suffered any harm, much less serious harm, resulting from any failure to respond to his emergency calls or grievances. In addition, official DOC records do not show that Plaintiff harmed himself at any time in 2018 while in A–Unit. To the contrary, official DOC records show that A–Unit staff consistently responded to Plaintiff's claims of emergencies, only to find that they were not emergencies at all. Dkt. 28, Stringham Dec., ¶ 8, Ex. 2 (OMNI Chrono Notes). For example, on June 16, 2018, when Plaintiff declared a mental health emergency and Defendant Stringham approached his cell front, Plaintiff held up a "Not Guilty" finding for an infraction this writer had written, and Plaintiff "proceeded to laugh and 'dance around' his cell. Will be

REPORT AND RECOMMENDATION - 8

infracted for lying to staff and declaring a false emergency." Dkt. 28, Stringham Decl., Ex. 2 at 12.

There is also no competent evidence that any of the defendants in this case knew of and disregarded an excessive risk to Plaintiff's health or safety or that defendants were deliberately indifferent to any serious medical need of Plaintiff's. Official DOC records show that A–Unit staff responded to Plaintiff's false emergencies dozens of times. In spite of this history, A–Unit continued to respond to his emergency calls and grievances. Dkt. 28, Stringham Dec., Ex. 2; Dkt. 29, Vandenberg Dec., ¶ 4; Dkt. 30, Grey Dec., ¶ 4.

Plaintiff has not alleged and has not demonstrated that he had a true emergency to which one or more of the defendants failed to respond. Because Plaintiff has suffered no harm, much less serious harm, from the alleged failures of the defendants to respond to some of his emergency calls/grievances, the undersigned recommends that this Eighth Amendment claim be dismissed.

**B.      Denial of a Pen**

Plaintiff claims he was deprived of a pen for two days. This claim is without merit and should be dismissed.

Prison officials must provide writing instruments to inmates to ensure their right of access to the courts. *Sands v. Lewis*, 886 F.2d 1166, 1168 (9th Cir. 1989). However, for an inmate to establish an access to the courts claim, the inmate must allege and prove an actual injury to pending or contemplated litigation. *Lewis v. Casey*, 518 U.S. 343 (1996); *Silva v. Di Vittorio*, 658 F.3d 1090, 1102 (2011) (Actual injury to court access required in cases alleging active interference with litigation; dismissal of a pending case constitutes actual injury).

REPORT AND RECOMMENDATION - 9

Plaintiff has not alleged or established that being without a pen for two days violated his right of access to the courts. Because this claim implicates no constitutional right, it is recommended that it be dismissed.

**C.      Denial of Clothing and Bedding**

According to Plaintiff's complaint, he received at least two exchanges of clothing every week and some weekly linen exchanges. Plaintiff does not allege in his complaint or in the numerous grievances he attached to his complaint that he ever suffered any harm from not having more frequent exchanges of clothing and linens.

There is also no evidence that defendants caused Plaintiff harm by denying him more frequent exchanges of clothing and linen. Unit Supervisor Grey testified that while there were shortages of clothing and bedding in A–Unit for a brief period of time, this shortage was not caused by unit staff. Dkt. 30, Grey Dec., ¶ 5. Ms. Grey testified that she and Defendant Caraway worked diligently to resolve this problem and were largely successful in doing so. *Id*. Ms. Grey also testified that all inmates in A–Unit who needed clothing and bedding exchanges for health and comfort reasons got such exchanges. There is no competent evidence that Ms. Grey, Ms. Caraway, or anyone else in A–Unit was deliberately indifferent to Plaintiff's health or safety with regard to clothing and bedding exchanges.

Based on the foregoing, the undersigned recommends that Plaintiff's claim that his Eighth Amendment right to more frequent clothing and/or bedding exchanges was violated be dismissed.

**D.      Qualified Immunity**

"[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of

REPORT AND RECOMMENDATION - 10

which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). If the allegations make out a constitutional violation, the court must also determine whether the right alleged to have been violated was "clearly established." *Saucier*, 533 U.S. at 201.

A district court has "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson*, 555 U.S. at 231-32. The court may grant defendants qualified immunity at any point the court answers either prong of the inquiry in the negative. *See e.g.*, *Tibbetts v. Kulongoski*, 567 F.3d 529, 536-39 (9th Cir. 2009) (bypassed the first prong and granted defendants qualified immunity because plaintiff's due process right was not clearly established at the time of alleged violation).

As there is no evidence of any constitutional violation, Defendants Lisa Anderson, Sarah Blackburn, Breeann Caroway, Kathy Grey, Joan Jaeger, Mark Jones, Sandra Stice, Jeff Stringham, John Vandenberg, and Jack Warner are entitled to qualified immunity.

**E.      Injunctive Relief**

Plaintiff seeks injunctive relief, including an order ensuring that prison staff respond to his emergency calls, do not deprive him of a pen, and provide him more frequent changes of clothing and linens. Dkt. 8 at 4.

"An inmate's release from prison while his claims are pending generally will moot any claims for injunctive relief relating to the prison's policies unless the suit has been certified as a

REPORT AND RECOMMENDATION - 11

class action." *Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995). As Plaintiff has been released from DOC custody, his claims for injunctive relief are moot and should be dismissed.

## OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order. Therefore a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **April 15, 2019.** The Clerk should note the matter for **April 17, 2019**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed **seven (7)** pages. The failure to timely object may affect the right to appeal.

DATED this 25th day of March, 2019.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 12